UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY L. SMITH,<br><br>   Plaintiff,<br><br>   v.<br><br>GOODWILL OF THE SAN FRANCISCO BAY, INC., et al.,<br><br>   Defendants. | Case No. 23-cv-01327-JSC<br><br>**ORDER RE DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 41, 42, 44, 45 |

Gary Smith, proceeding without attorney representation, sues Goodwill of the San Francisco Bay, Inc. (Goodwill), a Goodwill employee, the City and County of San Francisco (City), the San Francisco Police Department, two San Francisco police officers, the GEO Group, Inc. (GEO), and a GEO employee for the loss of a laptop computer and hotspot adaptor. (Dkt. No. 38.)[1] Before the Court are Defendants' motions to dismiss and Goodwill's anti-SLAPP motion. (Dkt. Nos. 41, 42, 44, 45.) Having carefully considered the briefing, including post-hearing supplemental briefing, and with the benefit of oral argument on September 7, 2023, the Court DISMISSES Smith's Fourth Amendment claim without leave to amend, DISMISSES Smith's claim of conversion against the City without prejudice and without leave to amend, and DISMISSES Smith's claims against GEO and Goodwill without prejudice because the Court declines to exercise supplemental subject matter jurisdiction over Smith's remaining state law claims.

**COMPLAINT ALLEGATIONS**

In 2003, Smith was convicted of production, interstate transportation, and reproduction of

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

child pornography for interstate distribution. *United States v. Smith*, 367 F.3d 748 (8th Cir. 2004).[2] Smith was sentenced to 235 months in prison, followed by five years of supervised release. *United States of America v. Smith*, No. 3:02-cr-05019-01-MDH at 1 (W.D. Mo. Sept. 18, 2019). In October and November 2022, Smith was an inmate housed at a residential reentry center, or halfway house, operated by GEO while serving his federal sentence. (Dkt. No. 38 ¶¶ 11, 15, 19-20.)

On October 17, 2022, Smith enrolled in a Computer Basic Class at Goodwill. (Dkt. No. 38 ¶ 13.) After the completion of the class, Goodwill gifted a laptop computer and hotspot device to Smith. (*Id*. at ¶ 14.) Smith surrendered the laptop and hotspot to GEO while in custody at the halfway house. (*Id*. ¶ 15.) On October 24, 2022, a Goodwill employee asked Smith about his business plans. (*Id*. ¶ 16.) Smith emailed the Goodwill employee detailing the websites Smith had created in the past and providing a link to his new website. (*Id*.)

Around November 2, 2022, Goodwill notified GEO that Smith was producing sexually explicit material. (Dkt. No. 38 ¶ 17.) GEO issued an incident report, number 3698270, recording Goodwill's accusation. (*Id*.) Smith claims "[t]his accusation was ultimately deemed unfounded and untrue by the Federal Bureau of Prisons." (*Id*.) Goodwill notified the San Francisco Police Department "of some alleged illegal actions" by Smith. (*Id*. ¶ 18.) As a result, police officers seized the laptop computer and hotspot adaptor Goodwill gave to Smith from GEO "without probable cause or an authorized search warrant." (*Id*.) Smith was remanded to Alameda County Jail for the duration of his halfway house placement. (*Id*. ¶ 19.) After Smith was released from custody, he called the San Francisco Police Department three times regarding the seized laptop computer and hotspot adaptor, but no one at the police department could help Smith locate the equipment. (*Id*. ¶ 20.)

---

[2] The Court takes judicial notice of Plaintiff's criminal court records. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). A court can take judicial notice of facts "not subject to reasonable dispute" because they are "generally known within the court's territorial jurisdiction" or can be "accurately determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). This includes "undisputed matters of public record, including documents on file in federal and state courts." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

1    Smith alleges the loss of and failure to protect a laptop computer and hotspot adaptor,
2 violation of his Fourth Amendment rights, and defamation. (*Id*. ¶¶ 22-36.)

**PROCEDURAL HISTORY**

4    Smith filed his First Amended Complaint on June 20, 2023. (Dkt. No. 38.) Defendants
5 GEO, City, and Goodwill separately moved to dismiss the complaint. (Dkt. Nos. 41, 44, 45.) At
6 the hearing on the motions to dismiss, the Court ordered Plaintiff to submit further briefing to
7 address the viability of his Fourth Amendment claim given it is undisputed that when the alleged
8 events occurred he was in Bureau of Prisons custody at GEO and prohibited from possessing a
9 computer without Bureau of Prisons approval. (Dkt. Nos. 63, 64.) Having received the
10 supplemental briefing, the Court took the motions under submission. (Dkt. Nos. 68, 69, 70, 71.)

**DISCUSSION**

12    The City, GEO, and Goodwill move to dismiss the complaint for failure to state a claim
13 under Federal Rule of Procedure 12(b)(6). (Dkt. Nos. 41, 42, 44, 45.) Dismissal under Rule
14 12(b)(6) "may be based on either a lack of a cognizable legal theory or the absence of sufficient
15 facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d
16 1116, 1121 (9th Cir. 2008) (cleaned up). For Smith's complaint to survive, its factual allegations
17 must raise a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007).
18 Though the Court must accept the complaint's factual allegations as true, conclusory assertions are
19 insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially
20 plausible when the plaintiff pleads enough factual content to justify the reasonable inference the
21 defendant is liable for the misconduct alleged. *Id.* Because Smith is unrepresented by an attorney,
22 his complaint is held to less stringent standards than formal pleadings drafted by lawyers.
23 *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

**A. The City and County of San Francisco Defendants**

**1. Claim One – Illegal Seizure Under the Fourth Amendment**

26    Smith accuses the City, the San Francisco Police Department, and two San Francisco
27 police officers of violating his Fourth Amendment rights by seizing without a warrant the laptop
28 computer and hotspot adaptor given to him by Goodwill. (Dkt. No. 38 ¶ 22.)

3

### a. The Police Department Is Not a Proper Defendant

As a threshold matter, the San Francisco Police Department is improperly named as a defendant in this action because it is not an independent public corporation and therefore may not sue or be sued. *Bauer v. Ventura Cnty.*, 45 Cal. 2d 276, 288–89 (1955) (abrogated on different grounds). The City, however, may be sued and is the proper defendant. Cal. Gov't Code §§ 23000, 23004. Accordingly, Smith's claims against San Francisco Police Department are DISMISSED without leave to amend.

### b. Plaintiff Does Not State a Fourth Amendment Claim

To state a claim under 42 U.S.C. § 1983, Smith must allege his constitutional rights were violated by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Smith fails to state a claim for violation of his Fourth Amendment rights because the complaint fails to plausibly allege an unreasonable seizure. The Fourth Amendment guarantees

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Reasonableness is the ultimate standard under the Fourth Amendment. *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 71 (1992). Determining whether a seizure is reasonable requires the Court to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983). While the Fourth Amendment extends to incarcerated persons, the reasonableness of a particular search or seizure is determined by reference to the incarceration context. *Dillon v. Clackamas Cnty.*, No. 20-35544, 2022 WL 1285042, at *1 (9th Cir. Apr. 29, 2022) ("The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches and seizures. This right extends to incarcerated prisoners; however, the reasonableness of a particular search is determined by reference to the prison context." (cleaned up)).

A seizure "occurs when there is some meaningful interference with an individual's possessory interests in [their] property." *Soldal*, 506 U.S. at 61. "[S]eizures of property are

4

subject to Fourth Amendment scrutiny even though no search within the meaning of the Amendment has taken place." *Id.* at 68.  Ordinarily, a seizure of personal property is *per se* unreasonable within the meaning of the Fourth Amendment unless carried out pursuant to a warrant issued upon probable cause particularly describing the items to be seized.  *Place*, 462 U.S. at 701.  However, warrantless seizures are permitted in exigent circumstances, or if there exists some exception to the warrant requirement.  *Id.*  For instance, contraband found in a public place may be seized without a warrant.  *Payton v. New York*, 445 U.S. 573, 586–87 (1980).  As another example, a warrantless seizure to which an individual has consented does not violate the Fourth Amendment.  *United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015) ("Where a person consents to search and seizure, no possessory interest has been infringed because valid consent, by definition, requires voluntary tender of property.").

### i. Smith Had No Protectable Privacy Interest in the Contraband

To invoke Fourth Amendment protection, Smith must plead facts that support a plausible inference government action invaded Smith's justifiable, reasonable, or legitimate expectation of privacy.  *Hudson v. Palmer*, 468 U.S. 517, 525 (1984).  The custodial context of Smith's stay at GEO halfway house informs whether Smith had a reasonable expectation of privacy in the laptop computer and hotspot adaptor he "immediately surrendered to [GEO] for safekeeping while [he] was housed at the halfway house."  (Dkt. No. 38 ¶ 15); *Hudson*, 468 U.S. at 525–26 (holding incarcerated persons have no legitimate expectation of privacy in their prison cells).  That Smith "surrendered" the equipment to GEO also informs whether Smith had a reasonable expectation of privacy in the equipment because there is no legitimate expectation of privacy in things voluntarily conveyed to third parties.  *United States v. Miller*, 425 U.S. 435, 443 (1976) (ruling the Fourth Amendment does not prohibit the government's obtaining information revealed to and conveyed by a third party, even if the information was shared in confidence or for a limited purpose).

Drawing all reasonable inferences in Smith's favor, he had no reasonable expectation of privacy in the laptop computer and hotspot adaptor he "surrendered" to GEO.  GEO is a residential reentry center under contract with the Federal Bureau of Prisons.  (Dkt. No. 38 ¶¶ 11-12, 15, 17, 19-20); *see Washington v. Fed. Bureau of Prisons*, No. 21-CV-00787-JST, 2021 WL

1432235, at *1 (N.D. Cal. Mar. 11, 2021), *appeal dismissed*, No. 21-15651, 2021 WL 4785891 (9th Cir. June 24, 2021) (acknowledging the GEO Taylor Street residential reentry center is a halfway house for incarcerated persons managed and supervised by GEO Group pursuant to a contract with the Federal Bureau of Prisons). When Smith was housed at the GEO residential reentry center, he was in the custody of the Federal Bureau of Prisons for production, reproduction, and transportation of child pornography. *Smith*, No. 3:02-cr-05019-01-MDH at 1; (Dkt. No. 38 ¶¶ 15, 17.) Smith's placement at the GEO halfway house by the Federal Bureau of Prisons is authorized by statute. 18 U.S.C.A. § 3624. Federal Bureau of Prisons regulations prohibited Smith from leaving GEO without permission, signing any contracts without written permission, and returning to GEO with anything Smith did not take with him when leaving GEO. 28 C.F.R. § 570.38(c). Indeed, Smith alleges GEO "required" Smith to surrender the laptop computer and hotspot adaptor upon his return to the halfway house. (Dkt. No. 38 ¶ 33.) Smith was required to surrender the prohibited equipment to GEO because it was contraband Smith brought into a Bureau-of-Prisons-controlled facility. (*See* Dkt. No. 68 at 25 ("Confiscation and Disposition of Contraband" form from GEO Group, Inc. listing laptop and hotspot adaptor as "contraband…found in possession of, or in the living quarters of" inmate Gary Smith)[3]).

There is no reasonable or legitimate expectation of privacy in contraband brought into a Bureau-of-Prisons-controlled facility as a matter of law. The Bureau of Prisons is empowered to "summarily seize any object introduced into a Federal penal or correctional facility or possessed by an inmate of such a facility in violation of a rule, regulation or order promulgated by the Director, and such object shall be forfeited to the United States." 18 U.S.C.A. § 4012. Smith was

---

[3] Plaintiff Smith attached this document to his supplemental opposition to Defendants' motions to dismiss. Though unattached to the complaint, the Court considers this document because Smith's complaint necessarily relies on law enforcement's alleged confiscation of Smith's laptop computer and hot spot, which is memorialized in this document, and no party questions the authenticity of this document. (Dkt. No. 38 ¶¶ 18, 22, 27-28, 32.) "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). "Although mere mention of the existence of a document is insufficient to incorporate the contents of a document, the document is incorporated when its contents are described and the document is integral to the complaint." *Tunac v. United States*, 897 F.3d 1197, 1207 n.8 (9th Cir. 2018) (internal quotation marks and citation omitted).

1  prohibited from returning to GEO with anything he did not take with him when leaving GEO.  28

2  C.F.R. § 570.38(c)(10).  Yet Smith returned to GEO with a laptop computer and hotspot adaptor

3  he did not possess when he left GEO.  (Dkt. No. 38 ¶¶ 14-15.)  Thus, Smith—a Bureau of Prisons

4  inmate—possessed the laptop computer and hotspot adaptor in violation of Bureau of Prisons rules

5  and regulations.  Because the Bureau of Prisons may summarily seize any prohibited object

6  possessed by an inmate, no legitimate expectation of privacy extends to an inmate's possession of

7  prohibited equipment.  And because Smith, an inmate in possession of prohibited equipment, had

8  no reasonable expectation of privacy in the contraband laptop computer and hotspot adaptor while

9  in Bureau-of-Prisons custody at the GEO halfway house, the seizure of the equipment did not

10  implicate the Fourth Amendment.  *See, e.g.*, *United States v. Huart*, 735 F.3d 972, 975 (7th Cir.

11  2013) (ruling inmate held in halfway house had no reasonable expectation of privacy in

12  contraband cell phone).

13  Even if Smith had a privacy interest in the contraband equipment, that interest evaporated

14  when Smith surrendered the equipment to GEO.  There is no privacy interest under the Fourth

15  Amendment in things conveyed to third parties.  *Miller*, 425 U.S. at 443; *United States v.*

16  *Jacobsen*, 466 U.S. 109, 117 (1984) ("It is well-settled that when an individual reveals private

17  information to another, he assumes the risk that his confidant will reveal that information to the

18  authorities, and if that occurs the Fourth Amendment does not prohibit governmental use of that

19  information.").

### ii. Smith Had No Possessory Interest in the Contraband

21  Having determined Smith had no privacy interest in the contraband equipment, the next

22  question is whether Smith had a protected possessory interest in the contraband equipment.

23  *Jacobsen*, 466 U.S. at 124-26; *Place*, 462 U.S. at 705 ("The intrusion on possessory interests

24  occasioned by a seizure of one's personal effects can vary both in its nature and extent.").  "[T]he

25  absence of a privacy interest notwithstanding, a seizure of [an] article would obviously invade the

26  owner's possessory interest."  *Soldal*, 506 U.S. at 66.  However, Smith had no possessory interest

27  in the contraband equipment precisely because it was contraband the Bureau of Prisons could

28  have, at any time, summarily seized and forfeited to the United States.  18 U.S.C. § 4012

("Summary seizure and forfeiture of prison contraband"). Construing Smith's *pro se* complaint liberally and making all reasonable inferences in Smith's favor, it is implausible, given the undisputed fact of Smith's federal confinement at GEO, he legally obtained, possessed, or maintained any possessory interest in the laptop computer and hotspot adaptor. In other words, the seizure of the contraband equipment from GEO did not meaningfully interfere with Smith's possessory interest in the equipment because Smith was in federal custody and prohibited from having the equipment at all. *Segura v. United States*, 468 U.S. 796, 813 (1984) (holding defendants' possessory interests in seized apartment were "virtually nonexistent" while defendants were in custody); *see also United States v. Huart*, 735 F.3d 972, 975–76 (7th Cir. 2013) ("Huart was not permitted to possess a cell phone at Rock Valley, and therefore any phone he brought into the facility was contraband subject to search and confiscation."). Because no possessory interest was invaded, law enforcement's seizure of the contraband equipment from GEO did not violate the Fourth Amendment.

\* \* \*

In sum, Smith has failed to plausibly plead a Fourth Amendment violation by the City or either individually-named San Francisco Police Department officer. Smith had neither a reasonable expectation of privacy nor a legitimate possessory interest in the contraband laptop computer and hotspot adaptor, so the alleged seizure did not implicate the Fourth Amendment. "Under these pleaded facts, it would be futile to allow leave to amend." *Est. of Strickland v. Nevada Cnty.*, 69 F.4th 614, 623 (9th Cir. 2023). Accordingly, Defendant City's motion to dismiss Smith's Fourth Amendment claim is GRANTED without leave to amend. *Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017).

### 2. Claim Three – Loss of Property

Smith accuses the City and two individually-named San Francisco Police Department officers of "property loss of the laptop computer and hotspot adaptor." (Dkt. No. 38 ¶ 32.) Though Smith does not identify the federal or state law under which he brings his loss-of-property claim, Smith's complaint, liberally construed, asserts a claim of conversion.

The California Government Claims Act requires "all claims for money or damages against

local public entities be presented to the responsible public entity before a lawsuit is filed. Failure to present a timely claim bars suit against the entity." *City of Stockton v. Superior Ct.*, 42 Cal. 4th 730, 734 (2007); Cal. Gov't Code §§ 905, 945.4. "[F]ailure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action." *State of California v. Superior Ct.*, 32 Cal. 4th 1234, 1239 (2004). Because Smith alleges injury to personal property, he was required to present his government claim to the City within six months of the accrual of Smith's cause of action. Cal. Gov't Code § 911.2. "[A]n owner's cause of action accrues when the conversion occurs even if the owner is ignorant of the wrong committed." *Naftzger v. Am. Numismatic Soc'y*, 42 Cal. App. 4th 421, 429 (1996), *as modified on denial of reh'g* (Mar. 4, 1996).

Because Smith has failed to allege facts demonstrating he presented a government claim to the City for injury to his personal property or excusing compliance with the claim presentation requirement as set forth in the California Government Claims Act § 911.2, Smith's claim of conversion is DISMISSED without prejudice and without leave to amend. *State of California v. Superior Ct.*, 32 Cal. 4th 1234, 1239 (2004) ("[F]ailure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity."); *Trujillo-Lopez v. City of Vallejo*, No. 4:20-CV-02139-JSW, 2022 WL 16821652, at *10 (N.D. Cal. Nov. 8, 2022) ("[T]imely claim presentation is not merely a procedural requirement, but is a condition precedent to plaintiff's maintaining an action against defendant and thus an element of the plaintiff's cause of action." (cleaned up)).

To the extent Smith seeks recovery under a federal due process theory, "[t]he availability of an adequate state post-deprivation remedy, e.g., a state tort action, precludes relief because it provides sufficient procedural due process." *Penn v. Allen*, No. 23-CV-00126-JSC, 2023 WL 1769188, at *2 (N.D. Cal. Feb. 3, 2023); *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) ("[A] negligent or intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post deprivation remedy."). The California Government Claims Act provides such an adequate post-deprivation remedy. *Barnett*, 31 F.3d 816-17 (citing Cal. Gov't Code §§ 810-895). So, Smith does not have a claim for violation of his due process

rights for the alleged loss of his laptop computer and hotspot adaptor. And, in any event, he does not have a procedural due process claim given he had no right to possess the electronic devices in the first instance. *See City of Castle Rock v. Gomez*, 545 U.S. 748, 756 (2005) (ruling, for purposes of due process, a person has a protected property interest in a benefit only if they "have a legitimate claim of entitlement to it").

**B. Supplemental Jurisdiction**

Smith makes only state law claims against GEO and Goodwill. Having determined the federal claims—the basis for the Court's subject matter jurisdiction—must be dismissed without leave to amend, the Court dismisses the remaining state law claims without prejudice to be brought in state court. *See* 28 U.S.C. § 1367(c)(3) (a district court may decline to exercise supplemental jurisdiction over a claim if it "has dismissed all claims over which it has original jurisdiction."). As the Supreme Court commanded more than 50 years ago:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Dyack v. Commonwealth of N. Mariana Islands*, 317 F.3d 1030, 1037 (9th Cir. 2003) (holding after the district court granted summary judgment for defendants on the federal claims, § 1367(c)(3) gave the district court discretion to decline to exercise supplemental jurisdiction of the remaining state law claims); *Trustees of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 926 (9th Cir. 2003) (holding "it was appropriate for the district court to decline jurisdiction over the supplemental state claims because the federal claim had proven to be unfounded.").

Declining to exercise jurisdiction is especially appropriate given no discovery has occurred; indeed, this order is the Court's first substantive order in the case and no initial case management conference has been held. Further, Goodwill makes an anti-SLAPP motion, and the rules for such motions differ between federal and state court. A federal court must grant leave to

10

amend and allow discovery, whereas a California state court does not. *Gunn v. Drage*, 65 F.4th 1109, 1120 (9th Cir. 2023) ("If a defendant moves to strike 'on purely legal arguments,' courts must analyze the motion under Rules 8 and 12, but where a defendant asserts 'a factual challenge,' courts must treat the motion to strike as 'a motion for summary judgment,' triggering discovery").

Accordingly, Smith's claims against GEO and Goodwill are DISMISSED.

## CONCLUSION

Smith's Fourth Amendment claim is DISMISSED without leave to amend. *Yagman*, 852 F.3d at 863. Smith's claim of conversion against the City is DISMISSED without prejudice and without leave to amend. *Id*. Smith's claims against GEO and Goodwill are DISMISSED without prejudice because the Court declines to exercise supplemental subject matter jurisdiction over Smith's remaining state law claims.

This Order disposes of Docket Nos. 41, 42, 44, and 45.

**IT IS SO ORDERED.**

Dated: November 16, 2023

JACQUELINE SCOTT CORLEY
United States District Judge